191 P.3d 928 (2008)
FIRST PIONEER TRADING COMPANY, INC., a Washington corporation; Michael Carlman and Barbara Carlman, husband and wife, Appellants,
v.
PIERCE COUNTY, a subdivision of the state of Washington, Respondent.
No. 31291-3-II.
Court of Appeals of Washington, Division 2.
September 3, 2008.
*929 James W. Feltus, McGavick Graves PS, Loren Dee Combs, VSI Law Group PLLC, Tacoma, WA, for Appellants.
Jill Guernsey, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
HUNT, J.
¶ 1 First Pioneer Trading Company, Inc. appeals the trial court's affirmance of the Pierce County hearing examiner's land use decision denying First Pioneer's claim of a legal, nonconforming use of its property. First Pioneer argues that (1) the hearing examiner erred by finding that it failed to meet its burden of proof that the legal nonconforming use existed, and (2) the hearing examiner improperly applied the burden-shifting framework. We disagree and affirm.

FACTS

I. Background

A. Land Use
¶ 2 First Pioneer Trading Company, Inc., owns and occupies a 2.94-acre, rectangular parcel of land located at 14505 Old Military Road East in Puyallup (Property). The Burlington Northern and Santa Fe Railroad Company (BNSF) owned this land until 1999, when it sold the property to ANT, L.L.C. ANT conveyed the property to First Pioneer Trading Company by quitclaim deed in 2000.
¶ 3 First Pioneer operates a steel fabrication business on the property, in two commercial structures. In order to facilitate its steel fabrication business, First Pioneer also maintains various outdoor structures and commercial industrial vehicles on the site.

B. Zoning
¶ 4 From 1962 to 1988, the property was subject to a general Pierce County zoning ordinance, which allowed heavy manufacturing uses outright. But in 1988, the County passed an ordinance requiring a conditional use permit to use land in this zone for heavy manufacturing. And in 1995, the County rezoned the area around the property to a Rural 5 classification, which required a conditional land use permit for any use other than a one or two-family home.
*930 ¶ 5 On September 14, 2000, Pierce County issued a notice to First Pioneer that its use of the property violated the local zoning ordinance based on the existence of industrial uses and structures and the absence of a "record of building permits for any structures on this site." Administrative Record (AR) at 133.

C. Administrative Appeal to County Hearing Examiner
¶ 6 On January 2, 2002, First Pioneer administratively appealed the violation to the County's hearing examiner. First Pioneer contended that its steel fabrication business qualified as a prior legal nonconforming use and, as such, was not subject to the local zoning ordinance.

1. Testimony
¶ 7 First Pioneer and the County appeared before the hearing examiner for a public hearing. First Pioneer asserted that it had operated a steel fabrication business on the property continuously since before the County enacted the zoning ordinance forbidding such a use. But Mike Carlman, First Pioneer's owner, could not recall the exact date; instead, he testified that (1) he had established the business on the property around 1985 or 1986; and (2) in 1989 and 1994, he had built the two commercial structures on the property to facilitate his business.
¶ 8 First Pioneer attempted to show that it had operated a steel fabrication business on the property since the mid-1980s by presenting a series of receipts for material received, as well as invoices, utility bills, and other business records, addressed to 14505 Old Military Road East. Attorney Joseph Quinn testified that (1) he had represented First Pioneer in a suit "eight or nine years ago," and (2) First Pioneer had used the property for "relatively heavy industrial" work at that time. Audio Transcript (AT) at 20, 23.
¶ 9 Cross examining Carlman about the property's development, the County established that he had failed (1) to obtain building permits, site development permits, and conditional use permits; (2) to comply with environmental assessment requirements; (3) to inform the County that he used the residentially-zoned land for commercial purposes; and (4) to pay taxes on the property until the mid-1990s.
¶ 10 Members of the public also testified at the hearing. A former neighbor, Amy Parker, testified that in 1983, "there were activities conducted on the [Old] Military site on an adjacent parcel [from the Property] west of the railroad lease land," not on the property itself. AT at 53 (emphasis added). Parker presented aerial photographs from the County assessor's office, which the County had taken in 1985, 1991, and 1998. The 1985 photograph depicts no buildings present on the property. The 1991 photograph shows one residence and one storage unit on the property. The 1998 photograph depicts the property as it now appears, with multiple structures and buildings.[1]
¶ 11 Loren Combs, a current resident neighboring the property, submitted a letter stating:
When we purchased our home [in 2001], there was not a commercial steel fabricating business operating at 14505 Old Military Rd. E. contrary to what Mr. Carlman is claiming. When purchasing this home we were assured this was a residential area with no commercial business allowed.... We are ... continually bothered by his noise, the sandblasting, painting, grinding and fork lift operation that continues in a residential zone ... at all hours of the day. It has truly affected our quality of life.
AR at 9-10.

2. Hearing examiner's decision
¶ 12 After entering written findings and conclusions, the hearing examiner denied First Pioneer's appeal. Because First Pioneer had failed to obtain any building permits or site development review[2] for the *931 property, the hearing examiner determined that First Pioneer had
failed to establish that [it] was lawfully using the subject site as a manufacturing site before the Pierce County Code changed in the 1994/1995 time period. [It] has also failed to establish it has been in continuous use each and every year of the time period in question. The quality of evidence necessary to sustain [its] burden of proof has not been met.
Clerk's Papers (CP) at 18.
¶ 13 First Pioneer filed a motion for reconsideration, alleging that the hearing examiner had misinterpreted "fact material" and had improperly admitted exhibits. After allowing interested parties to respond, the hearing examiner denied the motion. First Pioneer appealed the hearing examiner's decision to the Pierce County Superior Court, under the Land Use Petition Act (LUPA), RCW 36.70C.130(1).

D. LUPA Appeal to Superior Court
¶ 14 Determining that the "Hearing Examiner's decision in this case [was] supported by substantial evidence," the superior court affirmed. The court noted that although
First Pioneer produced some evidence that it was involved in welding and metal fabricating at 14505 Old Military Road East, beginning in the late 1980s, [First Pioneer] relies on L & I claims forms and miscellaneous invoices bearing the Old Military Road East address as evidence, [and] fails to clearly show when use began on the parcel in issue [because] ... [t]wo adjoining parcels were served by the driveway at the 14505 Old Military Road East.
CP at 28-29. The superior court concluded that First Pioneer's "claim of continuous manufacturing use of the site prior to June 21, 1998, is ambiguous at best."
¶ 15 Accordingly, the superior court upheld the hearing examiner's decision that First Pioneer had failed to meet its burden of proof, and the court denied the appeal.
¶ 16 First Pioneer now appeals to our court.

ANALYSIS
¶ 17 First Pioneer argues that it submitted "[c]onsiderable evidence" and, therefore, the superior court erred by concluding that First Pioneer failed to meet its burden of proof establishing its prior legal nonconforming use of the property. The County responds that the hearing examiner properly found that First Pioneer did not meet its initial burden of proof. We agree with the County.

I. Standard of Review
¶ 18 Under LUPA, an applicant may apply for judicial review of a local land use decision. RCW 36.70C.130. The applicant must show that (1) the hearing examiner mistakenly interpreted the law; (2) there was insufficient evidence to support the decision; or (3) the hearing examiner's decision was clearly erroneous. City of Univ. Place v. McGuire, 144 Wash.2d 640, 647, 30 P.3d 453 (2001) (citing RCW 36.70C.130(b)-(d)).
¶ 19 We review the hearing examiner's decision as a whole under a substantial evidence standard. Id. Substantial evidence exists where there is "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998) (quoting Callecod v. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510, review denied, 132 Wash.2d 1004, 939 P.2d 215 (1997)). Because our review of facts is deferential to the trier of fact, we view the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum exercising fact-finding authority. State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wash.App. 614, 618, 829 P.2d 217 (citing Fisher Properties, Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 369-70, 798 P.2d 799 (1990)), review denied, 120 Wash.2d 1008, 841 P.2d 47 (1992). Here, that forum was the County hearing examiner.

*932 II. Legal Nonconforming Use
¶ 20 First Pioneer argues that the hearing examiner misapplied the burden-shifting framework applicable to legal nonconforming use cases. We disagree and hold that the hearing examiner applied the burden-shifting framework properly.
¶ 21 Legal nonconforming uses are vested legal rights. Skamania County v. Woodall, 104 Wash.App. 525, 539, 16 P.3d 701, review denied, 144 Wash.2d 1021, 34 P.3d 1232 (2001) (citing Van Sant v. City of Everett, 69 Wash.App. 641, 649, 849 P.2d 1276 (1993)). Washington law allows preexisting legal nonconforming uses to continue in spite of a subsequent contrary zoning ordinance. Jefferson County v. Lakeside Industries, 106 Wash.App. 380, 385, 23 P.3d 542 (2001), review denied, 145 Wash.2d 1029, 42 P.3d 974 (2002). But an applicant asserting a prior legal nonconforming use bears the initial burden to prove that (1) the use existed before the county enacted the zoning ordinance; (2) the use was lawful at the time; and (3) the applicant did not abandon or discontinue the use for over a year. Jefferson County, 106 Wash.App. at 385, 23 P.3d 542. Once the applicant establishes that such a legal nonconforming use existed before enactment of a contrary zoning ordinance, the burden of proof shifts to the municipality to show that the applicant abandoned or discontinued the use after the ordinance's enactment. Van Sant, 69 Wash. App. at 648, 849 P.2d 1276 (citing 8A E. McQuillin, Municipal Corporations § 25.191 (3d ed.1986)).

A. First Pioneer's Failure to Carry its Burden of Proof
¶ 22 Substantial evidence supports the hearing examiner's conclusion that First Pioneer failed to meet its burden of proof to show that its metal fabrication business on the property predated 1988, when the County first required permits for such industrial uses. As both the hearing examiner and trial court note, First Pioneer submitted numerous business documents addressed to "14505 Old Military Road East"; nevertheless, First Pioneer does not show that this address correlated with the property at issue for purposes of establishing a prior legal nonconforming use because the driveway to this address accessed two adjacent properties, only one of which was the property at issue here.[3]
¶ 23 Furthermore, residents of neighboring properties testified that there was no metal fabrication business on the property at issue before 2000. In particular, the aerial photographs show no activity on the property other than a residence and a storage shed in 1991, in stark contrast to First Pioneer's contention that it had operated a metal fabrication business outside on the property's grounds since 1985. The 1991 photograph, which the County took three years after requiring permits for industrial activity, shows the unlikelihood of First Pioneer's claim that it operated a significant metal fabrication business on the property for five to six years before 1998, when the County passed the ordinance requiring industrial use permits.
¶ 24 The evidence on which First Pioneer relied to establish that its steel fabrication business existed before the County enacted the 1988 zoning ordinance was not sufficiently conclusive to shift the burden of proof to the County. On the contrary, the County and neighbors of the property offered substantial evidence to support the hearing examiner's conclusion that First Pioneer failed to meet its initial burden of proving the existence of a prior legal nonconforming use.
¶ 25 We further note that the hearing examiner was in the best position to judge credibility of testimony presented at the public hearings. As the hearing examiner's findings demonstrate, he concluded that the County and neighboring residents' evidence was more persuasive than First Pioneer's. We defer to the fact finder's assessment of witnesses' credibility and the weight given to competing evidence. Accordingly, we hold that First Pioneer failed to establish the existence of a prior legal nonconforming use and, therefore, the burden of proof did not *933 shift to the County. See Fisher Properties Inc., 115 Wash.2d at 369-70, 798 P.2d 799.

B. First Pioneer's Failure to Establish a Vested Right
¶ 26 First Pioneer next contends that the hearing examiner erred in finding that its failure to obtain the correct permits for the property precluded it from claiming that its nonconforming use was "legal." Again, we disagree.
¶ 27 Pierce County Code 18.140.030 provides:
Pierce County regulations require acquisition of permits or approvals before certain activity may be performed. It shall be unlawful to conduct these regulated activities without first obtaining a written permit or approval. When a permit or approval has been issued, it shall be unlawful to act in a manner which is inconsistent with such permit or approval.
¶ 28 In 1988, the County passed Pierce County Code 18.10.390, which required land occupiers engaged in metal manufacturing to obtain conditional use permits before commencing such activities. It is undisputed that First Pioneer failed to obtain any permits for the property, including building permits, business permits, and environmental assessments.
¶ 29 First Pioneer relies heavily on Van Sant, 69 Wash.App. 641, 849 P.2d 1276, in which Division One of this court held that a land occupier's failure to obtain business licenses and permits was "not per se determinative of the continuance of a non-conforming use." Id. at 652, 849 P.2d 1276. Emphasizing that the hearing examiner based his decision primarily on the absence of a business license and tax records, the appellate court held that because "the non-conforming commercial use clearly vested," the hearing examiner focused improperly on the landowner's lack of permits and licenses. Id. at 652, 849 P.2d 1276.[4] But such is not the case here.
¶ 30 First Pioneer's claimed legal nonconforming use did not vest before 1988, when the use became illegal without a permit. The Van Sant court held that the trial court erred by determining that a property owner had abandoned a vested preexisting use, based on the absence of business permits or licenses. Id. at 651-53, 849 P.2d 1276. Here, in contrast, the hearing examiner considered First Pioneer's failure to obtain permits in determining whether First Pioneer had established the existence of a legal, preexisting use. Specifically, the hearing examiner found that First Pioneer failed to "demonstrate that [its] use of the site was lawful at the time the Pierce County Code changed and therefore [it] is not entitled to a nonconforming use classification." CP at 18. Also, as the hearing examiner noted, First Pioneer submitted "no records of any type, such as tax records, business licenses, or any other formal records indicating that the site was used to conduct a business. The property tax records indicate it was conducted as a residential use and not as a commercial use." CP at 16 (emphasis added).
¶ 31 First Pioneer failed to show that its industrial use of the property was legal at any time, before or after the County required permits for metal fabrication. Therefore, we affirm the hearing examiner's finding that First Pioneer failed to carry its initial burden to establish a prior legal nonconforming use.[5]

*934 III. Attorney Fees
¶ 32 The County argues that it is entitled to reasonable attorney fees under RCW 4.84.370 because it is the prevailing party. We agree.
¶ 33 RCW 4.84.370 provides:
[R]easonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals ... of a decision by a county ... to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
(a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit ...; and
(b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.
(2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.
¶ 34 Because the County is the prevailing party on appeal, we award the County reasonable attorney fees.
¶ 35 Affirmed.
We concur: ARMSTRONG, J., and PENOYAR, A.C.J.
NOTES
[1] Another private citizen, Tad Jackson, testified briefly about Carlman's industrial activities on another site.
[2] The hearing examiner noted that if First Pioneer had attempted to obtain the proper permits for its steel fabrication business, the application would have triggered County review of (1) building setbacks; (2) off-street parking; (3) parking-lot surface grading and storm drainage; (4) adequacy of the property's egress and ingress; (5) landscaping, screening and fencing; and (6) water, sewage, and County health and safety requirements.
[3] Puget Power owns the other land adjacent to the Property. First Pioneer and Puget Power's parcels share a driveway, which segregates the two parcels.
[4] Both the Van Sant court and First Pioneer's brief discuss cases from other jurisdictions. See Van Sant, 69 Wash.App. at 651-53, 849 P.2d 1276. These cases also distinguish between vested rights and non-vested rights.
[5] First Pioneer briefly argues that because the property is located on a railroad right-of-way, federal law preempts "the County's ability to regulate activities on railroad property, including the regulation of building permits, site plans, or grading permits." Br. of App. at 18-19. This argument also fails.

First, the hearing examiner specified in his "Findings Conclusions and Decision" that "[t]he Hearing Examiner has jurisdiction to consider and decide the issues presented by this appeal." CP at 15. We treat such unchallenged findings as verities on appeal. RAP 10.3(g). Thus, we need not consider First Pioneer's federal preemption argument because it failed to assign error to the hearing examiner's jurisdiction below. Second, we may refuse to consider arguments raised for the first time on review. RAP 2.5(a). Because First Pioneer failed to raise federal preemption below, we do not consider it for the first time on appeal.